UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

THOMAS K. BUSH,                )
                              )
            Plaintiff,         )
                              )
v.                            )        No.:  3:15-CV-524-TAV-CCS
                              )
ROBERT W. GODWIN, et al.,      )
                              )
            Defendants.        )

## MEMORANDUM OPINION

Before the Court are numerous motions filed by various parties in this civil action. All parties are proceeding *pro se*, though three defendants—Robert Godwin, Scott Hurley, and Rylan Shamblin—are licensed attorneys.  These motions are: (1) plaintiff's motion for relief from the Court's past orders [Doc. 51]; (2) defendants Hurley and Shamblin's motion to dismiss or for a more definite statement [Doc. 61]; (3) plaintiff's motion to add parties pursuant to Federal Rule of Civil Procedure 19 [Doc. 66]; (4) plaintiff's motion to suspend the Federal Rules of Civil Procedure [Doc. 68]; (5) plaintiff's motion concerning the Federal Rules of Civil Procedure and 18 U.S.C. § 4 [Doc. 74]; (6) plaintiff's first motion for sanctions under Federal Rule of Civil Procedure 11 [Doc. 77]; (7) plaintiff's motion to amend his complaint [Doc. 85]; (8) defendant Godwin's motion to dismiss [Doc. 91]; (9) the motion of defendants John R. Bush, Nancy Bush, John J. Bush, and Rebecca Bush (the "Bush defendants") to join Hurley and Shamblin's motion to dismiss [Doc. 92]; (10) plaintiff's second motion for sanctions under Rule 11 [Doc. 97]; and (11) plaintiff's motion for sanctions under Federal Rule of Civil Procedure 37 [Doc. 100].

Many of the responses to these motions were filed past the deadlines set forth in Eastern District of Tennessee Local Rule 7.1(a).  Nevertheless, given the parties' *pro se* statuses—as well as the many issues with proper service of process and other pleadings that have arisen in this case—the Court finds it appropriate to excuse the apparent tardiness of these filings.  Such an outcome is consistent with the "overall policy in [the Sixth] Circuit of resolving disputes on their merits," rather than on the minutia of procedural rules.  *Vergis v. Grand Victoria Casino & Resort*, 199 F.R.D. 216, 218 (S.D. Ohio 2000).  The Court also finds that good cause supports the Bush defendants' motion [Doc. 92] to join Hurley and Shamblin's motion to dismiss [Doc. 61], and thus will grant the former motion.  Finally, for the reasons explained throughout this opinion, the Court will grant defendants' motions to dismiss and deny plaintiff's various pending motions.

## I.  Background

### A.  Factual History

This case arises out of a will contest in the Probate Division of the Knox County Chancery Court (the "Probate Court") concerning the estate of plaintiff's father, J.D. Bush (the "Estate").[1]  Plaintiff alleges that the named defendants—his former attorneys, Hurley and Shamblin; the executor of the Estate, John R. Bush; the executor's attorney, Godwin; and his relatives, the Bush defendants—conspired to deprive plaintiff of his fair share of the Estate [Doc. 37].  Plaintiff asserts that Godwin and John R. Bush exerted an undue

---

[1] The Court draws this summary of plaintiff's allegations from his first amended complaint [Doc. 37].  Because this document is not organized in numbered paragraphs—as Federal Rule of Civil Procedure 10(b) requires—the Court instead references the page numbers of the complaint.

influence on the decedent to produce a will that left plaintiff no share of the decedent's bank accounts or of a trust he allegedly created [*Id.* at 3]. Plaintiff alleges that the decedent was particularly dependent on John R. Bush due to illness and frailty, and that Godwin and John R. Bush substituted a will of their own creation [*Id.* at 4]. Plaintiff also asserts that, on September 24, 2017, these individuals submitted a memorial letter stating the decedent was only a distant relative of the Bush brothers (of Bush Brothers & Company ("Bush Brothers")),[2] while he was in fact a close relative [*Id.* at 5].

Plaintiff next alleges that, since the decedent's death on February 5, 2008, Godwin, John R. Bush, and Nancy Bush have conspired to defraud the Internal Revenue Service ("IRS") and United States government [*Id.* at 5–6]. Plaintiff also asserts these defendants have defrauded John J. Bush and Rebecca Bush concerning the decedent's will and the probate proceedings, possibly causing them to file false income tax returns [*Id.* at 6–7]. Furthermore, plaintiff alleges that Godwin and John R. Bush violated an agreement regarding the appraisal of a house at 2104 Belcaro Drive, Knoxville, Tennessee 37918, and later rented out this house without paying any proceeds to plaintiff [*Id.* at 7]. Plaintiff asserts that, in 2009, defendants attempted to coerce plaintiff into signing his share of this house over to John R. Bush, Nancy Bush, and Home Federal Bank without a written offer [*Id.* at 7–8]. Plaintiff alleges that, at a July 2009 hearing before the Probate Court, the

---

[2] Bush Brothers & Company is one of the largest producers of canned beans in the United States and is headquartered in Knoxville, Tennessee.

Special Master scolded him for raising this attempted fraud, after which Godwin stood up laughing and said, "I wouldn't have signed that either" [*Id.* at 8].

According to plaintiff, nothing more occurred in the probate proceedings until 2011, when Godwin submitted another appraisal of the house, as well as of cemetery plots of which plaintiff was unaware [*Id.* at 9]. Plaintiff asserts that Godwin misled plaintiff about the subject of the 2011 hearing, which plaintiff had wanted to reschedule [*Id.* at 9–10]. Plaintiff next alleges that, in April 2012, he received $80,700 for the house and plots at Landmark Title & Closing in Canton, Georgia, and shortly thereafter received family photos and other belongings from John R. Bush via U.S. mail [*Id.* at 10–11].

Plaintiff asserts that he heard nothing more about the case until an August 2013 hearing before the Probate Court, which resulted from plaintiff filing a petition for settlement of accounts [*Id.* at 12]. Plaintiff avers that he then received income tax forms from John R. Bush in October 2013 beyond the time permitted by IRS regulations [*Id.* at 12–13]. Plaintiff also alleges that John R. Bush committed multiple breaches of his fiduciary duties as executor, including (1) failing to maintain a profitable estate, (2) acting in his own self-interest, (3) misappropriating Estate assets, (4) failing to respond to plaintiff's requests, (5) failing to keep proper records, and (6) failing to comply with unspecified Tennessee laws regarding estate administration [*Id.* at 13–14].

Plaintiff next turns to Hurley and his law partner Shamblin, whom plaintiff hired to represent him after the August 2013 hearing [*Id.* at 15]. Plaintiff alleges that Hurley kept delaying taking John R. Bush's deposition, failed to appear at an October 2013 hearing,

and told plaintiff not to worry about John R. Bush's IRS filings [*Id.* at 15–16]. Plaintiff asserts that he almost fired Hurley in December 2013, but that Hurley finally took John R. Bush's deposition in March 2014 [*Id.* at 16–17]. Plaintiff alleges that John R. Bush committed perjury at multiple points during this deposition in regard to the following matters: (1) the person who prepared the Estate's federal tax returns (plaintiff believes that Godwin and John R. Bush switched tax preparers to conceal Estate assets from plaintiff); (2) John R. Bush's knowledge of the decedent's past wills; (3) the decedent's receipt of income from and involvement with Bush Brothers; (4) whether the decedent signed the September 24, 2017, memorial letter; and (5) plaintiff's receipt of a written confirmation of the money he would receive for the house [*Id.* at 17–24]. Plaintiff also asserts that Godwin and John R. Bush failed to respond adequately to interrogatories concerning any financial relationships with Bush Brothers [*Id.* at 24]. As a result of these transgressions, plaintiff claims that John R. Bush and Godwin violated various federal and state criminal laws, which the Court discusses more fully in Section II.D below [*Id.* at 25].

Plaintiff further alleges that John R. Bush and Godwin conspired with Hurley and Shamblin to not submit plaintiff's deposition to the Probate Court, though plaintiff notes he eventually did so himself in late 2015 [*Id.* at 25–26]. Plaintiff asserts that he wanted Hurley to take the deposition of many other parties—including the other Bush defendants, Home Federal Bank manager Jennifer Collier, and Bush Brothers—but that Hurley repeatedly delayed doing so [*Id.* at 26–28]. Hurley allegedly blamed these delays on personal issues affecting Godwin and promised that Godwin would repay plaintiff's travel

expenses, though he never did [*Id.* at 28]. Plaintiff states that he fired Hurley in late 2015, but the Probate Court still would not let him file his own documents [*Id.* at 29]. Finally, plaintiff avers that Hurley appeared at a December 2015 Probate Court hearing and offered to represent plaintiff again, and that plaintiff agreed because he feared the case would otherwise be dismissed [*Id.* at 30]. The hearing was then canceled, and plaintiff asserts he had no other contact with Hurley until a December 2016 hearing, when the Probate Court dismissed Hurley and Shamblin as plaintiff's attorneys [*Id.* at 30–31].

As a result of these allegations, plaintiff seeks millions of dollars in compensatory and punitive damages from defendants—as well as injunctive relief against various parties and non-parties—for an assortment of federal and state criminal and civil wrongs [*Id.* at 34–48]. Defendants have denied any wrongdoing and assert that plaintiff's claims to relief are frivolous [*See* Docs. 55, 61, 67, 71, 91].

**B.      Procedural History**

The procedural history of this case is complex, and the Court will describe it here only to the extent necessary to provide background. On November 24, 2015, plaintiff filed his initial complaint against the Probate Court and the Estate [Doc. 1]. Magistrate Judge C. Clifford Shirley, Jr., later denied plaintiff's motion for appointment of counsel [Doc. 6], upon referral from this Court [Doc. 5]. Then, on May 2, 2016, the Court ordered plaintiff to show cause why this action should not be dismissed as a result of his failure to serve process on the Probate Court [Doc. 11]. Plaintiff responded [Docs. 12–13], and the Court ordered plaintiff to properly serve the Probate Court within thirty days [Doc. 14].

6

The Probate Court then moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), arguing that it lacks legal capacity to sue or be sued [Doc. 20]. At that same time, plaintiff filed multiple motions to amend his complaint and add new parties [Docs. 15–16, 30, 34], as well as a motion for a contempt hearing as to various defendants [Doc. 24]. On January 5, 2017, the Court entered an order granting plaintiff's motion to file an amended complaint, but denying his motions to add new parties and for a contempt hearing [Doc. 36]. The Court also denied the Probate Court's motion to dismiss as moot with leave to refile, given that plaintiff would be filing a new complaint [*Id.*]. Plaintiff then filed his first amended complaint [Doc. 37], which joined the parties who are currently defendants to this action and seemed to consent to dismissal of the Probate Court [*id.* at 42]. The Probate Court accordingly renewed its motion to dismiss [Doc. 39], which the Court granted on April 6 in light of the parties' apparent agreement [Doc. 47].

On May 8, plaintiff filed a motion for relief [Doc. 51] from the Court's January 5 and April 6 orders [Docs. 36, 47]. The parties filed various responses and replies to this motion [Docs. 56–59]. Then, on May 30, defendants Hurley and Shamblin filed a motion to dismiss under Rule 12(b)(6) or, alternatively, for a more definite statement under Rule 12(e) [Doc. 61], to which plaintiff responded [Docs. 63–65]. Plaintiff subsequently filed a motion to add new parties [Doc. 66] and two motions concerning the applicability of the Federal Rules of Civil Procedure and other matters [Docs. 68, 74]. Then, on August 17, the Court dismissed the Estate, Knox County Probate No. P-08-67241, and "other unnamed defendants" in light of plaintiff's failure to serve those parties [Doc. 75].

Plaintiff next filed a motion for sanctions under Federal Rule of Civil Procedure 11 [Doc. 77] and a fourth motion to amend his complaint [Doc. 85]. Defendant Godwin later responded in opposition to plaintiff's motion to amend and moved for dismissal [Doc. 91], having informed the Court that he had not received service of plaintiff's motion despite plaintiff's certificate of service [Doc. 85 pp. 6–7]. The Bush defendants then filed a motion to join in Hurley and Shamblin's motion to dismiss [Doc. 92], and Hurley and Shamblin responded in opposition to plaintiff's motion to amend [Doc. 93]. Finally, plaintiff filed a response to Godwin and the Bush defendants' motions [Doc. 94], as well as two additional motions for sanctions [Docs. 97, 100]. Hurley and Shamblin have responded to one of these motions [Doc. 99], and plaintiff replied [Doc. 102].

## II.    Analysis

The Court will first consider plaintiff's motion for relief from the Court's past orders [Doc. 51]. Next, the Court will address plaintiff's motion to amend his complaint [Doc. 85], followed by his motions concerning the Federal Rules of Civil Procedure [Docs. 68, 74]. After that, the Court will consider defendants' motions to dismiss the complaint for failure to state a claim [Docs. 61, 91–92]. Finally, the Court will address plaintiff's motions to add new parties [Doc. 66] and for sanctions [Docs. 77, 97, 100].

### A.    Plaintiff's Motion for Relief from the Court's Past Orders

First, plaintiff seeks relief [Doc. 51] from the Court's January 5, 2017, and April 6, 2017, orders addressing a variety of issues in this litigation [Docs. 36, 47]. Defendant Godwin and former defendant the Probate Court filed responses in opposition [Docs. 56–

57], to which plaintiff filed two reply briefs [Docs. 58–59]. For the reasons explained below, the Court will deny plaintiff's motion for relief.

Plaintiff's motion specifies Federal Rule of Civil Procedure 60(b) as the basis for the relief he seeks. But that rule authorizes the Court to "relieve a party . . . from a *final* judgment, order, or proceeding." Fed. R. Civ. P. 60(b) (emphasis added). Instead, the orders at issue are interlocutory in character because they "adjudicate[d] fewer than all the claims or the rights and liabilities of fewer than all the parties" in this action. Fed. R. Civ. P. 54(b). The Sixth Circuit Court of Appeals has recognized that "[d]istrict courts have authority both under [federal] common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). Reconsideration of an interlocutory order is proper when the movant shows either: "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quoting *Rodriguez*, 89 F. App'x at 959). However, a motion for reconsideration is not a means by which "to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier." *Ne. Ohio Coal. for the Homeless v. Brunner*, 652 F. Supp. 2d 871, 877 (S.D. Ohio 2009).

First, plaintiff seeks relief from the Court's April 6 order dismissing the Probate Court from this action [Doc. 47]. Plaintiff argues that he did not understand the meaning of the phrase *sui juris* as used in the Probate Court's briefs [Docs. 20, 39], though he now cites to the *Black's Law Dictionary* definition of this phrase as "indicat[ing] legal competence, the capacity to manage one's affairs" [Doc. 51 p. 2]. Plaintiff next states that, at a July 2009 hearing before the Probate Court, defendant Godwin laughed and said, "I wouldn't have signed that document either," which plaintiff found highly disrespectful and possibly indicative of a "health issue" [*Id.* at 3–5]. Plaintiff also alleges that he was prevented from filing papers with the Probate Court and that the December 14, 2016, Special Master's report was partially fraudulent. Plaintiff explains that he withdrew his claims against the Probate Court because he did not know how to raise the issue that "one of the probate parties may be suffering from a deteriorative health condition, dementia, [or] Alzheimer's," and because he feared his complaint would be dismissed in its entirety if he did not [*Id.* at 6–7]. Plaintiff further alleges that the Probate Court committed a variety of discovery violations—specifically, of Federal Rules of Civil Procedure 26, 36, and 37—by failing to provide detailed responses to plaintiff's filings.

Plaintiff next turns to the Court's January 5 order [Doc. 36] granting in part and denying in part leave for plaintiff to amend his complaint, denying his motion for a contempt citation and hearing, and denying his motions to reopen proceedings in *Bush v. United States District Court*, 472 F. App'x 889 (11th Cir. 2012), an action previously

before the Northern District of Georgia and the Eleventh Circuit Court of Appeals.[3]  First, the Court denied plaintiff leave to amend to join new parties and assert various violations of federal criminal law against them, finding that these statutes did not confer any private right of action on plaintiff.  Plaintiff now claims that he should have cited to the Special Master's report as a fraud on this Court, the Tennessee Court of Appeals, and other courts, and should have argued that "the[se] defendants were being contemptuous to a pending action in a high court" [Doc. 51 p. 11].  Plaintiff further argues that he was not asserting a private right of action, but was rather seeking to vindicate the public's interest in an injunction.  Next, plaintiff argues that the Tennessee and Federal Rules of Civil Procedure violate the separation of powers by failing to specify that the Probate Court and this Court are distinct branches of government from the federal and Tennessee executive branches, and that it was unconstitutional for the Knox County Law Director's office to represent the Probate Court.[4]  Plaintiff asks that this Court reopen proceedings against the Probate Court but have "the Chancellor" represent that party instead [*Id.* at 15].

Plaintiff also asks the Court to issue a temporary restraining order or preliminary injunction to prevent the Probate Court from entering any final order regarding the Estate. Plaintiff states that such an order would cause him immediate and irreparable injury.

---

[3] In that case, the Eleventh Circuit affirmed the Northern District of Georgia's dismissal of plaintiff's 42 U.S.C. § 1983 action as frivolous.  *Bush*, 472 F. App'x at 890.  Plaintiff had named all federal courts and judges as defendants in that action.  *Id.* at 889.

[4] Plaintiff states that the "Knox County District Attorney" represented the Probate Court, but the Court assumes that he intended to refer to the Knox County Law Director's office, the attorneys of which have represented the Probate Court before this Court.

Plaintiff asserts he is *alieni juris*, i.e., under this Court's control or direction, and thus requires the Court's help in seeking injunctive relief under Federal Rule of Civil Procedure 65. Furthermore, plaintiff asks for this Court's assistance in petitioning the Eleventh Circuit to reopen proceedings in *Bush v. United States District Court*, though plaintiff now recognizes the Court lacks jurisdiction to order such relief directly. Plaintiff's primary contention seems to be that the Tennessee executive branch defrauded this Court by representing the Probate Court before it and by failing to respond properly to discovery requests. Plaintiff asserts that this Court should "retrieve the judicial power it has been defrauded out of" by petitioning the Eleventh Circuit [*Id.* at 24]. Finally, unrelated to these other arguments—or the purpose of his motion—plaintiff seeks leave to amend his complaint to join The Hurley Law Firm, P.C., in which Hurley and Shamblin are partners. Plaintiff does not specify the claims he would assert against this defendant.

Defendant Godwin's response argues that this Court lacks jurisdiction over this dispute, denies any wrongdoing as attorney for the Estate's executor, and requests that plaintiff's motion be denied and his complaint dismissed [Doc. 57]. The Probate Court's response also asserts a lack of jurisdiction and notes that the *Rooker-Feldman* doctrine[5] precludes this Court from reviewing any decision of the Probate Court [Doc. 56]. The Probate Court also argues that plaintiff's claim he did not understand the term *sui juris* is unavailing because, in its original motion to dismiss, it explained that "a court is not a legal

---

[5] This doctrine is derived from *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

entity which may sue and be sued, but is an organ of the government authorized to administer justice" [Doc. 20 p. 3 (quoting *Wood v. Circuit Court of Warren Cty.*, 331 F. Supp. 1245, 1245 (E.D. Tenn. 1971))]. The Probate Court also argues that plaintiff's claim he only voluntarily dismissed the Probate Court because he feared the dismissal of his entire case is disingenuous and disrespectful, as this Court always affords *pro se* litigants great latitude in bringing suit. Finally, the Probate Court argues that relief from the Court's orders on the basis of fraud is not appropriate because (1) any claim that the Special Master's report is fraudulent is a matter for the Probate Court and Tennessee appellate courts to address, and (2) failure to respond to a discovery request is not fraud.

Plaintiff's collective thirty-page reply [Docs. 58–59] largely raises the same points as in his numerous prior briefs. Plaintiff explains he feared his case would be dismissed if he did not dismiss the Probate Court because of a sentence in the Court's January 5 order, which plaintiff interpreted to mean the Probate Court could file a motion to dismiss his complaint. Plaintiff also asserts that the issue of fraud in the Special Master's report is properly before this Court because the United States is a potential victim of such fraud. Plaintiff further provides a lengthy diatribe regarding alleged violations of legal ethics and fiduciary duty by Godwin, Hurley, and Shamblin in proceedings before the Probate Court, though the Court is uncertain how this narrative is relevant to the instant motion.[6] Plaintiff

---

[6] Plaintiff filed several exhibits in support of this narrative, one of which is a handwritten "fictitious order" stating that plaintiff, Godwin, Hurley, and Shamblin "are going to be launched on a Saturn V rocket to the moon" on July 16, 1969 [Doc. 58-5]. The Court believes that plaintiff created this document to demonstrate how one might forge signatures on a court order. Still, the Court is lost as to how this relates to whether the Probate Court is legally competent as a defendant.

also attempts to distinguish *Wood v. Circuit Court* on the ground that he is not attempting to sue any court for money damages, but rather to solicit the courts' help in preventing constitutional violations by the executive and legislative branches.

Having reviewed the parties' submissions, the Court finds no basis on which to reconsider either of its past orders [Docs. 36, 47]. Plaintiff has suggested no "intervening change of controlling law" or "new evidence available." *Rodriguez*, 89 F. App'x at 959. Moreover, plaintiff has not clearly argued that the Court committed a "clear error" of law or fact in its January 5 or April 6 orders. *Id.* Nevertheless, given plaintiff's *pro se* status, the Court construes his arguments as claims of clear error.

Although plaintiff's briefs address a wide range of topics, the main relief he seeks is the reinstatement of proceedings against the Probate Court. Notwithstanding the litany of criminal, civil, and ethical wrongs plaintiff alleges to have occurred before that court, this Court finds no clear error in its dismissal of the Probate Court because plaintiff does not dispute that he consented to such dismissal [Doc. 37 p. 42 ("The plaintiff has removed defendant Knox County Probate Court from the list of defendants, and requests/motions to dismiss [it] at this time.")]. While plaintiff now claims he erred in making that request, a party's inadvertence or mistake is not a proper basis for Rule 54 relief. Regardless, the Court would have granted the Probate Court's original motion to dismiss [Doc. 20] in any event because that court is not a proper party. Whether an entity is *sui juris*, i.e., has "[c]apacity to sue or be sued," is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). This Court has previously interpreted Tennessee law

14

to hold that its state courts lack legal capacity to sue or be sued. *Wood*, 331 F. Supp. at 1245. Plaintiff has offered no persuasive reason to reconsider that finding. *See Cooper v. Rapp*, 702 F. App'x 328, 334 (6th Cir. 2017) (noting that Ohio state courts are not *sui juris*). Moreover, even assuming the Probate Court did violate various discovery rules, its dismissal would still be proper because it is not capable of being sued.

Furthermore, while seeming to recognize that this Court lacks jurisdiction to reopen proceedings before the Northern District of Georgia and the Eleventh Circuit, plaintiff nonetheless asks this Court to petition the Eleventh Circuit to represent plaintiff in this action and to reinstate *Bush v. United States District Court*. This Court lacks any authority to assist plaintiff in such a manner. As an Article III court, this Court holds constitutional authority only to adjudicate cases and controversies that are properly before it pursuant to a federal statute. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341–42 (2006). Federal courts do not, and cannot, serve as advocates for particular litigants.

Next, the Court will deny plaintiff's motions for a preliminary injunction or temporary restraining order, to the extent such requests are proper at all in a motion for reconsideration of unrelated orders. Such temporary injunctions "are extraordinary and drastic remedies never awarded as of right. And that is why the plaintiff bears the burden to justify relief." *O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015). The burden for both forms of relief requires the plaintiff to prove an entitlement to equitable intervention via consideration of a number of factors. *See Winter v. Nat. Res. Def. Council*,

555 U.S. 7, 24 (2008); *Sampson v. Murray*, 415 U.S. 61, 88 n.59 (1974).  Here, plaintiff

irreparable injury absent injunctive relief.  This is insufficient.[7]

The Court also finds no error in its decision to deny plaintiff leave to amend his

complaint to join new parties for the purpose of asserting violations of federal criminal law

against them.  As explained further below, *see infra* Sections II.B, II.D, one private citizen

lacks a legally protectable interest in the prosecution of another, and federal criminal

statutes generally do not give rise to implied rights of action. *See Town of Castle Rock v.*

*Gonzales*, 545 U.S. 748, 767 (2005).  Thus, adding parties against whom plaintiff would

merely be attempting to assert criminal offenses would be a futile amendment, as the Court

explained in its January 5 order [Doc. 36].  Plaintiff also cites no authority—and the Court

is unaware of any—for the proposition that he has standing to prosecute claims of fraud on

this or other courts, whether as civil or criminal wrongs.  As a private litigant, plaintiff is

only empowered to sue in his own right, absent special circumstances not present here.  *See*

*Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (noting that "a party 'generally must assert

his own legal rights and interests, and cannot rest his claim to relief on the legal rights or

interests of third parties'" (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))).  Moreover,

as the Court has repeatedly explained to plaintiff, it has no authority to hold a party in

---

[7] While the parties have not briefed this issue, the Court notes that entering an injunction
to affect the outcome of a state probate proceeding might well violate the longstanding rule that
federal courts lack jurisdiction over probate matters.  *See Markham v. Allen*, 326 U.S. 490, 494
(1946) (noting that, for historical reasons, federal courts lack jurisdiction to "interfere with [state]
probate proceedings or assume general jurisdiction of the probate").

contempt for conduct that occurs before a different court, and the Court is unaware of any contemptuous activity by defendants in proceedings before this Court.

Finally, as for plaintiff's theory that the Federal and Tennessee Rules of Civil Procedure violate the separation of powers by failing to make clear that the Probate Court and this Court are not part of the executive branch, the Court finds this theory nonsensical, unsupported by citation to any authority, and in any event irrelevant to the relief plaintiff seeks in his motion. Thus, the Court will not consider it further. The Court will, however, explain below why it lacks authority to suspend the Federal Rules of Civil Procedure. *See infra* Section II.C. Accordingly, for all of these reasons, the Court will deny plaintiff's motion for reconsideration [Doc. 51] of its past orders [Docs. 36, 47].[8]

## B.      Plaintiff's Motion to Amend his Complaint

Third, plaintiff has moved for leave to amend his complaint [Doc. 85], to which defendants Godwin, Hurley, and Shamblin have responded in opposition [Docs. 91, 93]. For the reasons explained below, the Court will deny plaintiff's motion.

Under Federal Rule of Civil Procedure 15, a party may amend its pleading once as of right within twenty-one days of serving it, or within twenty-one days of service of a response if a response is required. Fed. R. Civ. P. 15(a)(1). But after that time expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so

---

[8] The Court will address plaintiff's request to join The Hurley Law Firm in Section II.E, *infra*, when it considers plaintiff's motion to join other parties [Doc. 66].

requires." *Id.* This decision rests within the district court's sound discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). Leave is generally appropriate "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *accord Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss" under Rule 12(b)(6). *Miller v. Calhoun Cty.*, 408 F.3d 803, 807 (6th Cir. 2005).

Federal Rule of Civil Procedure 8(a)(2) sets forth a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Furthermore, in ruling on a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *accord Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of [its] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).

Here, plaintiff has failed to attach a copy of a proposed amended complaint to his motion [*See* Doc. 85]. That alone would be sufficient reason to deny leave to amend. *See* E.D. Tenn. L.R. 15.1 ("A party who moves to amend a pleading shall attach a copy of the proposed amended pleading to the motion."); *see also* E.D. Tenn. L.R. 83.13 ("Parties proceeding *pro se* [are] expected to be familiar with and follow the . . . [Eastern District of Tennessee Local Rules]."). Nevertheless, given plaintiff's *pro se* status and his professed ignorance of the applicable procedural rules in many of his filings, the Court will decline to deny the motion on that basis. In any event, it appears to the Court that plaintiff may contemplate the text of his motion serving as the amendment he seeks. Thus, the Court will proceed to consider the merits of plaintiff's request.

In his motion, plaintiff seeks leave to amend on two topics. First, plaintiff states that he "want[s] to file a civil RICO complaint, but [he] does seek a ruling from the Court on whether the defendants form[ed] a racketeering enterprise, and whether [his] proposed amended complaint could pass the RICO test" [Doc. 85 pp. 2–3]. Plaintiff offers no other

19

detail on this point.  Second, plaintiff requests that, pursuant to Federal Rule of Civil Procedure 11(c)(5), the Court order defendants to pay the costs of service for plaintiff's proposed amended complaint, given their alleged violations of Rule 11(b)(1).  In addition, plaintiff raises the question—as he has done before—whether the Court should stay these civil proceedings so that a criminal investigation or prosecution of defendants may begin. Plaintiff asserts that he fears retaliation from Knox County Chancellor John F. Weaver, the Knox County Law Director and his staff, and Knox County Chancery Court Clerk and Master Howard G. Hogan.[9]  Plaintiff argues that it would be in the public's best interest for criminal proceedings to begin against these individuals and defendants.

Defendant Godwin's response summarizes the factual and procedural history of this dispute, before asserting that plaintiff's pleadings, as a whole, "fail to state a cause of action[ and] are frivolous and without merit" [Doc. 91 ¶ 7].  He thus moves the Court to dismiss this action with prejudice [*Id.*].  Furthermore, while Godwin does not expressly ask the Court to deny plaintiff leave to amend—indeed, Godwin seems to incorrectly assume plaintiff has already received such leave—the Court construes his motion for dismissal of this action as a whole as also opposing plaintiff's proposed amendments.

Defendants Hurley and Shamblin argue that the Court should deny leave to amend on the grounds of "repeated failure to cure deficiencies by previous amendments" and "futility of amendment" [Doc. 93 p. 4 (quoting *Brumbalough v. Camelot Care Ctrs., Inc.*,

---

[9] Plaintiff refers to these individuals as "defendants," but the Court has denied plaintiff leave to amend to join these new parties. *See supra* Section II.A.

427 F.3d 996, 1001 (6th Cir. 2005))]. These defendants note that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (emphasis omitted) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). Hurley and Shamblin argue that amendment would be futile because plaintiff fails to provide "even . . . a threadbare recital of the elements of the causes of action" he seeks to raise against defendants—much less facts sufficient to meet the plausibility standard of *Twombly* and *Iqbal* [Doc. 93 p. 7]. Thus, because plaintiff's proposed amendments offer nothing more than "statutory citations" and "unsupported conclusions," these defendants assert that a second amended complaint would not survive a Rule 12(b)(6) motion to dismiss [*Id.*].[10]

After considering the parties' positions on this matter, the Court concludes that granting plaintiff leave to amend his complaint would be futile and will therefore deny his motion. First, as to plaintiff's proposed addition of a civil cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, the Court finds that plaintiff has failed to state a claim that would survive a Rule 12(b)(6) motion to dismiss. Nowhere in plaintiff's motion [Doc. 85] does he list the elements of a civil RICO claim, much less provide factual allegations that plausibly allow "the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged."

---

[10] The Court notes that plaintiff has filed a reply to Hurley and Shamblin's response brief [Doc. 98]. Plaintiff's reply merely reiterates the same arguments the Court has already expounded above, so the Court does not discuss this filing further here.

*Iqbal*, 556 U.S. at 678.  Plaintiff's motion fails even to provide the "'naked assertion[s]' devoid of 'further factual enhancement'" that usually merit dismissal under Rule 12(b)(6). *Id.* (quoting *Twombly*, 550 U.S. at 557).  Indeed, plaintiff does little more than say the word "RICO."  This is insufficient to provide "fair notice" to defendants of "the grounds upon which [his civil RICO claim] rests."  *Twombly*, 550 U.S. at 555.

Given plaintiff's *pro se* status, the Court has also reviewed plaintiff's past filings—including his first amended complaint [Doc. 37]—and has found no plausible statement of a civil RICO claim.  Plaintiff's first amended complaint merely states that "defendants are in violation of the RICO statutes, [18 U.S.C.] § 1961, and do add up to a racketeering enterprise, along with other unnamed defendants" [*Id.* at 32].  Defendant later alleges that "there have been multiple violations of [18 U.S.C.] § 1341 mail fraud, [18 U.S.C.] § 1343 wire fraud, false declarations, etc.," amounting to "more than two predicate acts in a ten year time period" for RICO purposes [*Id.* at 46].  It is ambiguous whether these portions of plaintiff's earlier amended complaint seek to assert a criminal or civil RICO action.  Notably, most of the other claims plaintiff asserts are federal and state criminal offenses, rather than civil causes of action.  But because plaintiff's motion to amend seeks leave to add a civil RICO claim—and that is really the only substantive claim at issue in his motion—the Court construes plaintiff's first amended complaint as alleging criminal RICO violations by defendants.  Even supplementing plaintiff's motion to amend with these additional sentences from his first amended complaint, however, plaintiff still has pleaded nothing more than the "labels and conclusions" of a RICO claim, rather than "enough facts

to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. Thus, because plaintiff's proposed civil RICO claim would not survive a Rule 12(b)(6) motion to dismiss, the Court will deny plaintiff leave to add this claim.

The other assertions in plaintiff's motion are equally insufficient. Plaintiff's request that defendants pay the costs of service for his second amended complaint is premature—the Court has not yet granted leave to file such a pleading, and in fact will not do so. And, in any event, plaintiff offers no factual support whatsoever for his bare assertion that defendants have violated Rule 11(b)(1). As for plaintiff's argument that defendants should be criminally prosecuted for their actions, the Court lacks any authority to initiate such proceedings or encourage the Department of Justice to do so. *See Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 379 (2d Cir. 1973) (noting that "federal courts have traditionally and, to our knowledge, uniformly refrained from overturning, at the instance of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons"); *accord Hawkins v. Steible*, 16 F.3d 1219, 1994 WL 28617, at *1 (6th Cir. 1994) (table opinion). As this Court has tried to explain to plaintiff before, the decision whether to investigate and prosecute any particular individual for a criminal offense is the prerogative of the executive branch, not the judicial. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In our system, . . . the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion."). Thus, this argument could not sustain a viable claim to relief.

The Court is, of course, mindful of its duty to "liberally construe the briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel." *Bouyer v. Simon*, 22 F. App'x 611, 612 (6th Cir. 2001). At the same time, however, "the lenient treatment generally accorded to *pro se* litigants has limits," *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996), and courts have not "been willing to abrogate basic pleading essentials in *pro se* suits," *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Plaintiff's proposed amendments fail to meet even the bare essentials of a plausible claim to relief.[11] Thus, the Court finds that his motion to amend proposes no amendments to his first amended complaint that would survive a Rule 12(b)(6) motion to dismiss. Amendment is therefore futile, and plaintiff's motion will be denied.

### C.  Plaintiff's Motions to Suspend the Federal Rules of Civil Procedure

Fourth, plaintiff has filed two motions pertaining to the applicability of the Federal Rules of Civil Procedure [Docs. 68, 74]. None of the defendants have responded to these motions. Nonetheless, the Court will deny both motions.

In his first motion [Doc. 68], plaintiff submits that he has filed a pleading in a related case before the United States District Court for the Northern District of Georgia, Case No. 1:17-cv-2379, and has attached that pleading for filing in this case as well [*id.* at 5–10]. In

---

[11] Plaintiff's request that the Court determine whether defendants formed a racketeering enterprise, and thus whether plaintiff's proposed amendment complaint "could pass the RICO test," is equally inappropriate [Doc. 85 p. 3]. This essentially asks the Court to rule on whether plaintiff would succeed on the merits of a RICO claim at trial, which would be the jury's prerogative. And the Court does not understand plaintiff to be moving here for summary judgment in his favor on a theory of civil RICO liability.

this "Petition for Suspension of Rules," plaintiff asks both this Court and the Northern District of Georgia to suspend the Federal Rules of Civil Procedure, citing to Federal Rule of Appellate Procedure 2. Plaintiff notes that he is a *pro se*, non-attorney litigant and argues that, if the Court does not suspend or modify the Federal Rules of Civil Procedure, "a manifest injustice would otherwise result against not only the plaintiff, but both district courts, and the public" [Doc. 68 p. 7]. Plaintiff asserts that both this Court and the Northern District of Georgia have "the right to petition the Eleventh Circuit for a rule change under FRAP 2" [*id.* at 8], because both courts and their respective judges were defendants in *Bush v. United States District Court*, 472 F. App'x 889 (11th Cir. 2012).

In his second motion [Doc. 74], plaintiff seems to seek relief from the Court's August 17, 2017, order requiring him to show cause why he had failed to serve process on the Estate, Knox County Probate No. P-08-67241, and "other unnamed defendants" within the time permitted by Federal Rule of Civil Procedure 4(m) [Doc. 72]. The Court subsequently dismissed the claims against these defendants after plaintiff failed to show cause for this failure [Doc. 75], so to that extent plaintiff's motion is moot. But plaintiff also appears to ask that the Court find that Rule 4(m) does not apply in this case. This argument is premised largely on the ground that various individuals and entities—including the Northern District of Georgia, certain named and unnamed defendants, and Home Federal Bank—have failed to comply with 18 U.S.C. § 4 by reporting defendants' alleged felonies. Plaintiff argues that he has the right to the assistance of the United States Attorney in arresting, prosecuting, and serving documents on defendants. Plaintiff cites to a recent

criminal case in this district involving violations of 18 U.S.C. § 4—*United States v. Baumgartner*, No. 3:12-cr-60—and suggests his equal protection rights have been violated because similar prosecutions have not been brought here. Finally, plaintiff argues that the Federal Rules of Civil Procedure are unconstitutional, obstruct justice in *pro se* litigation, and cause the federal courts to fail to comply with 18 U.S.C. § 4.

The Court finds both of plaintiff's motions to be meritless. This Court lacks any authority to suspend or modify the applicability of the Federal Rules of Civil Procedure to these proceedings. The Rules Enabling Act, 28 U.S.C. § 2072(a), empowers the U.S. Supreme Court "to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts . . . and courts of appeals." The Supreme Court has responded by adopting the Federal Rules of Civil Procedure, and Rule 1 provides that the Rules shall "govern the procedure in *all* civil actions and proceedings in the United States district courts" (emphasis added). The Supreme Court has further noted that "[t]his expansive language contains no express exceptions and indicates a clear intent to have the Rules . . . apply to all district court civil proceedings." *Willy v. Coastal Corp.*, 503 U.S. 131, 134–35 (1992). Indeed, the Eastern District of Tennessee Local Rules expressly mandate that "[p]arties proceeding *pro se* shall be expected to be familiar with and follow the Federal Rules of Civil Procedure." E.D. Tenn. L.R. 83.13.

Plaintiff's reliance on Federal Rule of Appellate Procedure 2 is also misplaced. That rule merely provides that "a *court of appeals* may—to expedite its decision or for other good cause—suspend any provision of *these* rules [i.e., the Federal Rules of Appellate

Procedure] in a particular case." Fed. R. App. P. 2 (emphasis added). Rule 2 thus provides no authority for a *district court* to suspend the Federal Rules of *Civil* Procedure. The Court also sees no reason why being named as a defendant in a distinct, now-dismissed appeal would confer standing on this Court to petition the Eleventh Circuit for suspension of the Rules. And, in any event, the Eleventh Circuit is equally without authority to suspend the Federal Rules of Civil Procedure, which are promulgated by the U.S. Supreme Court under congressional mandate. *Willy*, 503 U.S. at 134. Further, the fact that certain individuals or entities involved in this litigation may have committed misprision of a felony in violation of 18 U.S.C. § 4 has no bearing on the Rules' applicability. This is a civil action, even if plaintiff also hopes that the Department of Justice will prosecute defendants for certain crimes. Plaintiff must thus comply with the procedural requirements for civil cases, including Rule 4(m). *See* Fed. R. Civ. P. 1. Finally, plaintiff's "one-sentence conclusory assertion" that the Rules—presumably in their entirety—are unconstitutional, obstruct justice, and cause the federal courts to violate 18 U.S.C. § 4 offers no adequate basis for judicial decisionmaking, and is thus without merit. *Cartwright v. United States*, Nos. 1:08-cv-103, 1:04-cr-33, 2011 WL 6003659, at *11 (E.D. Tenn. Dec. 1, 2011).[12]

---

[12] As for plaintiff's argument that the nonprosecution of defendants infringes his equal protection rights, such a theory has nothing to do with the applicability of the Federal Rules of Civil Procedure. And, in any event, this argument is meritless because one private citizen lacks any legally protectable interest in the prosecution or nonprosecution of another. *Gonzales*, 545 U.S. at 767; *see also infra* Section II.D.

In sum, this Court lacks authority to suspend the Federal Rules of Civil Procedure and will thus deny both of plaintiff's motions requesting such relief [Docs. 68, 74].

### D.    Defendants' Motions to Dismiss

Next, the Court considers defendants' motions to dismiss for failure to state a claim [Docs. 61, 91–92].  Plaintiff filed several responses to these motions [Docs. 63–65, 94], several of which far exceed the page limitation provided by Local Rule 7.1(b).  The Court has summarized the relevant standard of review for a Rule 12(b)(6) motion to dismiss earlier in this opinion.  *See supra* Section II.B.  In light of that standard, and for the reasons explained below, the Court will grant defendants' motions to dismiss.

Defendants Hurley and Shamblin move this Court to dismiss plaintiff's action under Rules 12(b)(1) and 12(b)(6), or, alternatively, to require plaintiff to file a more definite statement under Rule 12(e) [Doc. 61].  Defendants argue that the amended complaint "[a]t best . . . can be charitably described as a disfavored 'shotgun pleading'" [*Id.* at 2 (quoting *Krusinski v. U.S. Dep't of Agric.*, 4 F.3d 994, 1993 WL 346858, at *5 (6th Cir. 1993) (table opinion) (Suhrheinrich, J., concurring))].  Defendants argue that the complaint fails to provide either "a short and plain statement of the grounds for the court's jurisdiction" or "a short and plain statement of the claim showing that the pleader is entitled to relief" on any particular claim.  Fed. R. Civ. P. 8(a)(1)–(2).  As in their opposition to plaintiff's motion to amend [Doc. 93], defendants assert that plaintiff fails to even list the elements of the claims he seeks to assert, much less facts plausibly substantiating those claims.

Defendants further assert that the complaint fails to satisfy the heightened pleading standard for fraud under Rule 9(b), despite the fact that almost all of his claims explicitly or implicitly hinge on allegations of fraud. Moreover, defendants argue that plaintiff lacks standing to prosecute criminal offenses and that this Court lacks jurisdiction over violations of Tennessee criminal law or attorney ethical rules. Finally, in the alternative, defendants move for a more definite statement under Rule 12(e), arguing that the amended complaint is so vague and ambiguous that it fails to provide fair notice of the claims against these defendants. Hurley and Shamblin also note that the amended complaint does not comply with Rule 10(b), which requires a pleading to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

Plaintiff's lengthy, rambling responses to Hurley and Shamblin's motion largely reiterate the same arguments he has made previously in this case [*See* Docs. 63–65]. The Court will not summarize all of these points again here. Having reviewed plaintiff's responses in detail, the Court finds the following new arguments in his first brief: (1) plaintiff's complaint is not final because he plans to amend it many more times before this litigation ends; (2) plaintiff wishes to wait for Hurley and Shamblin to answer the complaint before adding more detail to his complaint; (3) all parties but plaintiff are guilty of repeatedly violating 18 U.S.C. § 4, misprision of a felony; (4) Hurley and Shamblin are guilty of obstructing justice and fraud on the Court by seeking dismissal of this case; (5) various defendants have committed perjury in various proceedings, before both this Court and the Probate Court; (6) former Acting U.S. Attorney General Sally Yates has violated

federal law by not investigating plaintiff's claims; and (7) in an unrelated state court action—which plaintiff styles as "State of Georgia (Cobb County) v. Dial Feb/March 1992 Cobb County Magistrate Court" [Doc. 63 p. 36][13]—plaintiff was able to seek recovery without filing written pleadings or citing authority, thus raising due process concerns in this case. Otherwise, plaintiff merely repeats the allegations from his complaint concerning the allegedly fraudulent proceedings before the Probate Court.[14]

Plaintiff's second response brief [Doc. 64] asks this Court to join this action with various proceedings before the Northern District of Georgia, which the Court lacks any authority to do. Plaintiff then proceeds to accuse former Acting Attorney General Yates, attorneys with the Knox County Law Director's office, Clerk and Master Hogan, and Chancellor Weaver of various federal crimes, including misprision of a felony, for failing to report defendants' felonies. The caption at the beginning of plaintiff's response lists these individuals—along with many other new parties—as defendants to this action, though the Court has not granted plaintiff leave to amend to join such parties. Plaintiff also again references the *Dial* case and seems to argue that his due process rights have been violated by having to pay a filing fee and proceed through the judicial branch to engage

_____

[13] The Court has been unable to locate a written opinion from this case on any electronic service available to it, likely due to the advanced age of the case.

[14] Plaintiff ends his first response brief by making a number of motions, most of which the Court has already addressed, either in this opinion or in a prior ruling [Doc. 63 pp. 40–46]. To the extent these motions are not moot, the Court declines to address them here because it is procedurally improper to assert new motions for relief in a response brief to a different party's motion. *See Frankenmuth Mut. Ins. v. Aircomfort HVAC, Inc.*, No. 4:15-cv-132, 2017 WL 3446212, at *1 n.1 (N.D. Ga. Jan. 30, 2017).

with the executive branch. Plaintiff thus seeks an order requiring the President of the United States and the Department of Justice to prosecute defendants. Finally, plaintiff's third response brief [Doc. 65] merely repeats the same factual assertions and requests for relief contained in his prior two responses and other past filings.

Next, the motions to dismiss filed by Godwin [Doc. 91] and the Bush defendants [Doc. 92] do not raise any additional substantive arguments beyond those asserted by Hurley and Shamblin and merely move for dismissal of this action as meritless. Plaintiff has filed a fourteen-page response brief that, from the Court's review, does not address the merits of defendants' Rule 12(b)(6) motions at all [Doc. 94]. Instead, plaintiff discusses the scheduling of depositions and interrogatories, alleges that defendants have committed various discovery violations, reiterates his allegations of criminal offenses, and accuses defendants of "sociopathic, psychopathic behavior, in regards to pathological lying" [*Id.* at 6–7 (internal quotation marks omitted)]. Plaintiff also reasserts his entitlement to various forms of relief the Court lacks authority to provide, i.e., commencing criminal proceedings against defendants and having this Court represent plaintiff.[15]

---

[15] Plaintiff also asks whether it would be "possible for the Court to issue a partial summary judgment in [his] favor, punitive damages, court costs, etc. and . . . turn the case over to the U.S. Attorney to prosecute the defendants" [Doc. 94 p. 9]. The Court is uncertain whether plaintiff is actually moving for partial summary judgment under Federal Rule of Civil Procedure 56. It would be procedurally improper to make such a motion as part of a response to an opposing party's motion to dismiss. But, in any event, plaintiff's one-sentence query does not make any attempt to carry the burden of the moving party under Rule 56(c). Plaintiff does not even make clear the claims for which he would be seeking summary judgment. Thus, to the extent this request may be construed as a Rule 56 motion, the Court will deny it.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In other words, federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Furthermore, because Congress has elected to limit the scope of federal jurisdiction beyond the full sweep of what Article III would permit, *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 807 (1986), "district courts may not exercise jurisdiction absent a statutory basis," *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). In civil actions, the two predominant sources of such authority are federal question jurisdiction and diversity of citizenship jurisdiction. *See* 28 U.S.C. §§ 1331–32.

It is for these reasons that Rule 8(a)(1) requires complaints to contain "a short and plain statement of the grounds for the court's jurisdiction." Plaintiff's first amended complaint contains nothing of the kind [*See* Doc. 37].[16] Instead, as the Court reads it, the complaint merely attempts to allege the following theories of culpability: (1) conspiracy to commit an offense against or defraud the United States in violation of 18 U.S.C. § 371; (2) fraud and false statements in violation of 26 U.S.C. § 7206; (3) a criminal RICO violation under 18 U.S.C. § 1961; (4) mail fraud in violation of 18 U.S.C. § 1341; (5) wire fraud in violation of 18 U.S.C. § 1843; (6) perjury in violation of 18 U.S.C. § 1621; (7) false

---

[16] The amended complaint states only, "[P]laintiff alleges the Court has jurisdiction over Title 18 U.S.C. offenses and Title 26 tax code offenses" [Doc. 37 p. 33]. While true, as explained further below, these criminal statutes do not confer jurisdiction on this Court in a *civil* case.

statements in violation of 18 U.S.C. § 1623; (8) misprision of a felony in violation of 18 U.S.C. § 4; (9) conspiracy to commit perjury in violation of Tenn. Code Ann. § 39-16-702; (10) conspiracy to commit aggravated perjury in violation of Tenn. Code Ann. § 39-16-703; (11) theft of services in violation of Tenn. Code Ann. § 39-14-104; (12) breach of fiduciary duty by defendants John R. Bush, Godwin, Hurley, and Shamblin; and (13) unspecified violations of the Tennessee Rules of Professional Conduct by Godwin, Hurley, and Shamblin [*See* Doc. 37 pp. 31–48]. While plaintiff seeks different forms of relief for these alleged wrongs—including compensatory and punitive damages, return of property, injunctions, and restraining orders—these appear to be the only substantive theories of liability plaintiff attempts to allege in his complaint.

Of course, this Court has jurisdiction over all federal crimes under 18 U.S.C. § 3231. But that does not mean plaintiff himself has standing to prosecute defendants for a federal criminal offense. Indeed, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 767 (2005) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *see also Sefa v. Kentucky*, 510 F. App'x 435, 438 (2013) (noting that a private citizen "cannot assert a private right of action under any of the federal criminal statutes"). Plaintiff also has not alleged that these federal criminal statutes contain implied private rights of action; nor is the Court aware of any authority for such a proposition. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) (noting that the Supreme

Court "ha[s] been quite reluctant to infer a private right of action from a criminal prohibition alone"). Furthermore, because the "irreducible constitutional minimum of standing" is jurisdictional in character, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), this Court lacks Article III jurisdiction over violations of federal criminal law when alleged by private litigants.

Similarly, this Court lacks jurisdiction over both state-law criminal offenses and alleged violations of state ethical rules for lawyers. *See App. of Jordan*, 439 F. Supp. 199, 210–11 (S.D.W. Va. 1977) ("State crimes fall exclusively within the jurisdiction of [the] state criminal courts."). Furthermore, an alleged violation of the Tennessee Rules of Professional Conduct does "not itself give rise to a cause of action against a lawyer." Tenn. Sup. Ct. R. 8, RPC Preamble. Thus, even if the amended complaint could be read to assert a private right of action arising out of any ethical breach by Godwin, Hurley, or Shamblin, the Court would dismiss such a theory for failure to state a claim. Accordingly, this Court lacks jurisdiction over, and will dismiss, all of plaintiff's claims arising out of federal criminal law, Tennessee criminal law, and the Tennessee Rules of Professional Conduct. Thus, the only possibly viable causes of action plaintiff appears to allege are breaches of fiduciary duty by defendants John R. Bush, Godwin, Hurley, and Shamblin under Tennessee law. *See ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 24 (Tenn. Ct.

App. 2005). The amended complaint might also be read to allege a claim for civil conspiracy, as defendants Hurley and Shamblin note [Doc. 61 p. 3].[17]

To the extent plaintiff does seek to assert any of these state-law civil causes of action, the Court finds that he has failed to plead sufficient "factual content [to] allow[] the [C]ourt to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiff has failed to provide even "[t]hreadbare recitals of the elements of [these] cause[s] of action," which in any event would be insufficient. *Id.*; *see also Scheid*, 859 F.2d at 436 (noting that a complaint must contain "allegations respecting all the material elements" of the plaintiff's claims). Indeed, the complaint is so devoid of a proper statement of the identities and elements of the claims plaintiff wishes to allege that defendants and this Court have been left to speculate as to what those claims might be. And, while plaintiff makes clear that he wishes to state claims of breach of fiduciary duty against John R. Bush, Godwin, Hurley, and Shamblin, he has failed to allege, among other things: (1) what if any duties Bush and Godwin owed to him; (2) how those duties were violated; and (3) how some breach of duty by his attorneys, Hurley and Shamblin, was the factual and proximate cause of a negative outcome for plaintiff before the Probate Court. *See Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W.2d 400, 403 (Tenn. 1991) (listing the elements of a legal malpractice claim).

---

[17] The elements of a Tennessee civil conspiracy claim are (1) a common design, (2) concert of action, (3) an overt act, and (4) resulting injury to person or property. *Braswell v. Carothers*, 863 S.W.2d 722, 727 (Tenn. Ct. App. 1993).

The Court also finds that plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," even if he had properly identified his causes of action and their elements. *Twombly*, 550 U.S. at 555. "[V]ague and conclusory allegations unsupported by material facts are not sufficient" to sustain a claim against a Rule 12(b)(6) motion to dismiss. *Becker v. Ohio State Legal Servs. Ass'n*, 19 F. App'x 321, 322 (6th Cir. 2001). Plaintiff's complaint is replete with allegations that defendants committed perjury, fraud, or some other form of misrepresentation in various filings and hearings before both this Court and the Probate Court. The problem is that these "'naked assertion[s,]' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678, are insufficient to sustain a claim to relief. Plaintiff merely asserts—repeatedly and in a conclusory fashion—that defendants have defrauded him, the courts, and the public. While the Court generally considers all factual allegations of the complaint in the light most favorable to the plaintiff, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan*, 478 U.S. at 286). But even if the Court were to accept these allegations of deception as true, plaintiff has failed to plead facts even touching on the other elements of breach of fiduciary duty, legal malpractice, and civil conspiracy. In sum, the amended complaint simply fails to provide defendants with "fair notice" of the grounds on which plaintiff's civil theories rest. *Id.*

Furthermore, none of plaintiff's arguments in his response briefs bar the dismissal of this action. Most of these arguments are, frankly, irrelevant to the question whether the amended complaint satisfies the pleading requirements of Rule 8. The fact that various

individuals—both parties to this action and others—may have violated federal criminal statutes is, for reasons explained above, an insufficient basis on which to perpetuate this litigation. Allegations of perjury, fraud, obstruction of justice, and the like in the course of these proceedings are likewise insufficient to maintain a complaint that fails to properly state any plausible claim to relief. Moreover, as for plaintiff's argument that his complaint is not yet in its final form,[18] the Court notes that plaintiff has already sought to amend his complaint four times [Docs. 15, 30, 34, 85], in addition to merely announcing amendments or additions of parties in numerous filings. This case has also been pending before this Court for over two years. And, in ruling on defendants' Rule 12(b)(6) motions, the Court must consider the complaint as it currently stands. Finally, as it has repeatedly explained, this Court lacks authority to force the U.S. Attorney for the Eastern District of Tennessee to prosecute these defendants or assist plaintiff in his civil action.[19]

---

[18] The Court also notes that, contrary to one of plaintiff's arguments, the decision of Hurley and Shamblin to move for dismissal under Rule 12(b)(6) rather than immediately filing an answer to plaintiff's complaint is permissible under Rule 12(a)(4)(A).

[19] In addition, the Court finds plaintiff's lengthy descriptions of the *Dial* case in the Cobb County Magistrate Court both confusing and irrelevant. Even if that court permitted plaintiff to proceed without filing any pleadings or citing any authority, the requirements of federal procedural law are to the contrary and are binding on this Court. Indeed, this district's Local Rules make clear that *pro se* litigants like plaintiff are required to become familiar with and abide by those rules. E.D. Tenn. L.R. 83.13. Next, even assuming that having to proceed through the courts to force the executive branch to take a particular action violates plaintiff's due process rights—a dubious theory, given that this is the precise governmental structure Articles I, II, and III of the Constitution contemplate—such a constitutional claim would not impact the factual viability of plaintiff's civil claims against these individual defendants. Finally, plaintiff's argument that having to pay a filing fee violates his due process rights is frivolous. *See Erdman v. Martin*, 52 F. App'x 801, 802 (6th Cir. 2002) (noting that "[t]here is no generalized right to litigate which is protected by the [Federal Constitution].").

Of course, the Court is cognizant of the fact that plaintiff is proceeding *pro se* and thus lacks formal training or experience in drafting pleadings. The Court has endeavored to "liberally construe" plaintiff's briefs to allow him to prosecute his case as he deems best. *Bouyer*, 22 F. App'x at 612. Still, the leniency traditionally afforded to *pro se* litigants does not justify a total abrogation of the requirements of notice pleading enshrined in the Federal Rules of Civil Procedure. *Wells*, 891 F.2d at 594. At a minimum, these standards require sufficient notice to defendants of the precise claims against them and the factual allegations that prove the elements of those claims. *See U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008) (noting that these requirements are "born out of a need to ensure fundamental fairness for defendants"). That is lacking here. Therefore, the Court will grant defendants' motions to dismiss for failure to state a claim [Docs. 61, 91–92][20] with respect to all causes of action in the amended complaint [Doc. 37].[21]

### E.    Plaintiff's Motion to Add Parties

Fifth, plaintiff seeks leave under Federal Rule of Civil Procedure 19 to add new parties [Doc. 66]. For the reasons explained below, the Court will deny this motion.

Plaintiff seeks to add the following parties to this action: (1) the U.S. Attorney for the Eastern District of Tennessee, specifically pursuant to Rule 19(a)(1); (2) Bush Brothers;

---

[20] As such, the Court will deny as moot Hurley and Shamblin's motion for a more definite statement under Rule 12(e). Further, the Court need not consider Hurley and Shamblin's arguments concerning the heightened pleading standard of Rule 9(b) because the Court has found plaintiff's amended complaint insufficient under the lower standard of Rule 8.

[21] The Court also notes that, alternatively, dismissal of this action as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) would be appropriate.

(3) Home Federal Bank; (4) Home Federal Bank manager Jennifer Collier; (5) First Choice Lending / Financial Radiant Title loan manager Chris Hogrefe; (6) Landmark Title & Closing in Canton, Georgia; and (7) the United States Court of Appeals for the Eleventh Circuit. Plaintiff asserts that the U.S. Attorney for the Eastern District of Tennessee is both a necessary and indispensable party. Plaintiff also notes that he has filed a "petition for mandamus order" seeking to have the Northern District of Georgia assist him before the Eleventh Circuit, and moves for an extension of time for the Northern District of Georgia to rule on his petition [*Id.* at 2].[22]

The Court need not consider whether joinder under Rule 19 is appropriate for any of these parties. First, because plaintiff is "the master of the complaint," he can simply seek to join additional parties under the much lower standard of Rule 20, at least for those against whom he seeks to assert a claim. *Staubus v. Purdue Pharma, L.P.*, No. 2:17-cv-122, 2017 WL 4767688, at *4 (E.D. Tenn. Oct. 20, 2017) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)).[23] But the Court would deny joinder here under Rule 20 as well. Plaintiff does not specify which of these parties he wishes to join as defendants and which (e.g., the U.S. Attorney) he seeks to bring in as plaintiffs under Rule

---

[22] Plaintiff has attached a copy of this petition, which asks the Northern District of Georgia to compel the President and the Department of Justice to investigate and prosecute the alleged wrongdoing of defendants here [Doc. 66 pp. 7–25]. The Court does not consider the merits of this petition because plaintiff has not filed it with this Court.

[23] Rule 20 provides that persons may join as plaintiffs or be joined as defendants if (1) any right to relief is asserted by or against them arising out of the same transaction or occurrence, and (2) a question of law or fact common to all parties will arise in the action. Fed. R. Civ. P. 20(a).

19. Regardless, the Court assumes that plaintiff wishes to raise against these parties—or have these parties raise—the same claims as in his first amended complaint.

The Court has already held, however, that none of the causes of action in the complaint state a viable claim for which the Court may afford relief. *See supra* Section II.D. Plaintiff's motion to add parties offers no additional facts to sustain his civil causes of action (i.e., breach of fiduciary duty, civil conspiracy, and a potential civil RICO claim), and the Court would still lack jurisdiction over alleged violations of federal and state criminal law and the Tennessee Rules of Professional Conduct. Thus, adding these parties would be futile because this "proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller*, 408 F.3d at 807; *see also Sherwood v. Tenn. Valley Auth.*, No. 3:12-cv-156, 2017 WL 3261769, at *3 (E.D. Tenn. July 31, 2017) (noting that the futility standard for motions to amend under Rule 15 applies equally to motions to join parties under Rule 20). In other words, adding new plaintiffs or defendants to this case, absent any further factual allegations, would do nothing to establish "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.[24]

Therefore, the Court will deny plaintiff's motion to add new parties [Doc. 66].[25]

---

[24] For the same reasons, the Court will also deny plaintiff's request to add The Hurley Law Firm as a new party [Doc. 51 pp. 26–27]. Plaintiff appears to seek to assert the same factually deficient claims against this party as against Hurley and Shamblin.

[25] The Court also notes that it lacks authority to grant an extension of time for the Northern District of Georgia to rule on plaintiff's mandamus petition.

### F. Plaintiff's Motion for Sanctions

Finally, the Court will consider plaintiff's three motions for sanctions [Docs. 77, 97, 100]. For the reasons explained below, the Court will deny these motions.

Plaintiff's first motion purports to seek sanctions against defendants under Rule 11(b).[26] Defendants have not responded to this particular motion. Plaintiff's disorganized, twenty-page motion alleges various violations of Federal Rule of Civil Procedure 11—along with federal criminal statutes and other laws—by named defendants and other individuals who are not parties to this action. Almost all of plaintiff's allegations simply state that a particular individual has violated a certain subsection of Rule 11, without elaboration. Thus, the bulk of this motion violates Rule 11's requirement that "[a] motion for sanctions must . . . describe the *specific conduct* that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2) (emphasis added).

However, the Court need not resolve that question because plaintiff's motion is procedurally improper. Under Rule 11(c)(2), a motion for sanctions "must be served on the offending party for a period of 'safe harbor' at least twenty-one days prior to the entry of final judgment or judicial rejection of the offending contention." *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997); *see also Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 766–67 (6th Cir. 2014) ("[T]he drafters of Rule 11 . . . included the safe-harbor provision to allow the nonmovant a reasonable period to reconsider the legal

---

[26] Plaintiff also seeks sanctions from a nonparty, The Hurley Law Firm. As already discussed, the Court has denied plaintiff leave to add this party.

and factual basis for his contentions and, if necessary, to withdraw the offending document." (citing Fed. R. Civ. P. 11 advisory committee's note)). Only after expiration of the twenty-one-day safe harbor without the nonmoving party correcting the alleged violation may the movant file the motion for sanctions with the court.

Here, there is no evidence that plaintiff complied with the Rule 11(c)(2) safe-harbor provision. Plaintiff's submissions make no mention of him having served his motion for sanctions on defendants at least twenty-one days before filing it with the Court. Indeed, plaintiff's motion gives the same date for the date of service on defendants and the date of filing with this Court—September 6, 2017 [Doc. 77 pp. 16, 18]. This suggests that plaintiff did not, in fact, permit defendants twenty-one days in which to correct any violations of Rule 11. And the Sixth Circuit has insisted on "strict adherence" to the rule that "sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed." *Uszak v. Yellow Transp., Inc.*, 343 F. App'x 102, 107–08 (6th Cir. 2009) (quoting *Ridder*, 109 F.3d at 297) (reversing a district court's award of Rule 11 sanctions where the movant waited only eight days after serving the sanctions motions before filing it with the court).

Therefore, the Court will decline to impose sanctions for these alleged violations of Rule 11.[27] Plaintiff's motion also requests a ruling as to whether defendant Godwin is in default under Federal Rule of Civil Procedure 55 or is in violation of 18 U.S.C. §§ 401,

---

[27] Because the Court finds plaintiff's arguments for sanctions to be meritless, the Court will also decline to exercise its inherent authority to impose sanctions on defendants. *See Metz v. Unizan Bank*, 655 F.3d 485, 490–91 (6th Cir. 2011).

402, and 1503, due to his delays in responding to plaintiff's pleadings. To the extent they may be construed as motions, these requests are procedurally improper because a motion for sanctions "must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). And, in any event, these requests are moot in light of the Court's dismissal of this action, as well as plaintiff's lack of standing to seek criminal prosecution of Godwin.[28] As such, the Court will deny plaintiff's first motion in its entirety.[29]

Plaintiff's second motion for sanctions likewise alleges violations of Rule 11(b) by unspecified defendants [Doc. 97]. Defendants Hurley and Shamblin responded in opposition to this motion [Doc. 99], to which plaintiff replied [Doc. 102]. This motion is defective for the same principal reasons as plaintiff's first motion for sanctions: It fails to "describe the specific conduct that allegedly violates Rule 11(b)," Fed. R. Civ. P. 11(c)(2), and there is no indication that plaintiff complied with Rule 11(c)(2)'s mandatory twenty-one day safe harbor provision. Indeed, defendants Hurley and Shamblin affirmatively submit that plaintiff failed to serve his motion on them before filing it with the Court [Doc. 99 p. 2], and plaintiff does not contravene this claim in his reply brief—with respect to

---

[28] The Court also declines to impose a default judgment against Godwin on the alternative ground that plaintiff has failed to comply with Rule 55's procedural requirement of having the Clerk of Court first enter a default. Fed. R. Civ. P. 55(a). Moreover, although Godwin did not file a document styled as an "answer" within thirty days of Magistrate Judge Shirley's order that he answer the complaint [Doc. 49], Godwin did timely file a response brief that, in substance, responds to the allegations of the amended complaint as a whole [Doc. 57]. Thus, the Court finds that entry of a default judgment against Godwin would be unwarranted.

[29] Plaintiff's motion concludes by once again asking the federal judiciary to assist him in prosecuting both civil and criminal actions against defendants. For the reasons explained both in this opinion and previously in this case, the Court lacks authority to afford such relief.

these defendants or any others [*see* Doc. 102]. Plaintiff's motion also repeats his request that the Court represent him in this action, which it cannot do, and alternatively requests that the Court require defendants to pay for a court-appointed attorney for him. However, Magistrate Judge Shirley has already denied plaintiff's motion for appointment of counsel [Docs. 2, 6], and the Court finds no reason to revisit that decision. Therefore, plaintiff's second motion for sanctions will be denied in its entirety.[30]

Next, plaintiff's third motion for sanctions seeks monetary relief under Rule 37 for various alleged discovery violations, in addition to reiterating many requests for relief the Court has already denied [Doc. 100]. Rule 37 permits a party to "move for an order compelling disclosure or discovery," and also authorizes the Court to impose monetary sanctions or issue protective orders depending on the resolution of that motion. Fed. R. Civ. P. 37(a)(1), (5). However, an essential prerequisite to such relief is that "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); *see also Thomas v. Nat'l Coll. of Va., Inc.*, No. 1:09-cv-879, 2010 WL 11489253, at *1 (S.D. Ohio Oct. 28, 2010) (noting that "[t]his prerequisite . . . is not an empty formality," and denying a Rule 37 motion for lack

---

[30] Defendants Hurley and Shamblin also request that the Court award them the expenses they incurred in responding to plaintiff's motion, as Rule 11(c)(2) permits. *See* Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."). In light of plaintiff's *pro se* status and his professed lack of legal training or education, the Court will decline to grant such relief. The Court also declines to alternatively construe plaintiff's motion as a motion under Rule 37—as these defendants do—given that plaintiff subsequently filed an actual Rule 37 motion [Doc. 100].

of a good faith certificate (quoting *Ross v. Citifinancial, Inc.*, 203 F.R.D. 239, 240 (S.D. Miss. 2001))).  Plaintiff's motion contains nothing of the sort.  Thus, the Court will deny his third motion for sanctions.[31]

Finally, plaintiff has sought in several motions to recover the costs of hiring a private process server from Hurley, Shamblin, and certain of the Bush defendants, whom plaintiff claims failed to timely respond to his requested waivers of service [Doc. 77 pp. 2–8; Doc. 97 p. 4].  Such costs—but not the millions of dollars in compensatory and punitive damages plaintiff seeks from Hurley and Shamblin—are potentially recoverable under Federal Rule of Civil Procedure 4(d)(2).  However, as noted above, it is procedurally improper to combine any other motion with a Rule 11 motion for sanctions.  Fed. R. Civ. P. 11(c)(2).  Both of plaintiff's requests for service costs appear in what purport to be Rule 11 motions [Docs. 77, 97].  In addition, plaintiff's motions fail to specify his "expenses later incurred in making service" or "reasonable expenses . . . of any motion[s] required to collect those service expenses."  Fed. R. Civ. P. 4(d)(2)(A)–(B).  And the record is otherwise devoid of any evidence identifying or quantifying plaintiff's service expenses [*See, e.g.*, Docs. 41–43, 52–54].  Thus, the Court would be unable to award plaintiff waiver-of-service costs even if he were entitled to such relief.

---

[31] Rule 37(a)(5)(B) provides that, when a motion to compel is denied, the court "must, after giving an opportunity to be heard, require the movant . . . to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion."  Here, however, none of the defendants have responded to plaintiff's Rule 37 motion.  Such relief is thus unwarranted.  *See id.* ("But the court must not order this payment if the motion [to compel] was substantially justified or other circumstances make an award of expenses unjust.").

**III.    Conclusion**

For the reasons explained above, the Court will order as follows:

(1)    plaintiff's motion for relief [Doc. 51] will be **DENIED**;

(2)    plaintiff's motion to join parties [Doc. 66] will be **DENIED**;

(3)    plaintiff's motions to suspend the application of the Federal Rules of Civil Procedure [Docs. 68, 74] will be **DENIED**;

(4)    plaintiff's motions for sanctions [Docs. 77, 97, 100] will be **DENIED**;

(5)    plaintiff's motion to amend his complaint [Doc. 85] will be **DENIED**;

(6)    the Bush defendants' motion to join [Doc. 92] will be **GRANTED**;

(7)    defendants Hurley and Shamblin's motion to dismiss or, alternatively, for a more definite statement [Doc. 61] will be **GRANTED IN PART and DENIED IN PART**;

(8)    defendant Godwin's motion to dismiss [Doc. 91] will be **GRANTED**;

(9)    this action will be **DISMISSED WITHOUT PREJUDICE**; and

(10)    the Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE